UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

CONTENT EATON, an individual,

               Plaintiff,

v.

TEXAS ROADHOUSE,

               Defendant.

Case No. 4:13-CV-00226-EJL-REB

**MEMORANDUM DECISION AND ORDER**

Pending before the Court in the above-entitled matter is Defendant Texas Roadhouse, Inc.'s (Roadhouse) Motion for Summary Judgment (Dkt. 35) and Plaintiff Content Eaton's Motion to Strike Declaration of Patrick Bradford and Exclude His Testimony at Trial (Dkt.40). Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument.

# BACKGROUND

Ms. Eaton began working at the restaurant called Texas Roadhouse in Ammon, ID. She began as a server in October of 2008. Later, she was promoted to Assistant Service Manager. When Ms. Eaton was hired, she acknowledged receiving Roadhouse's employment policies, including a policy prohibiting harassment and discrimination. (Exhibit 4, Dkt. 35-5, p. 15-16.) The policies set forth the ways an employee could report harassment: speaking with a manager, contacting the human resources or legal department at corporate, submitting a complaint electronically or via a telephone hotline.

In the Amended Complaint Ms. Easton states she worked directly under Scott Baird who also started as a server but was promoted to Service Manager. Around February of 2012 (after completing four months of training) Mr. Baird started working as the Service Manager at the Ammon restaurant. In the Amended Complaint and in her deposition, Ms. Eaton states she reported to the Managing Partner or restaurant manager Patrick Bradford. Mr. Baird also reported to Mr. Bradford. Ms. Eaton states Mr. Baird did not have the ability to promote or fire her, but that he did have the ability to control her schedule or assigned tables when she worked or filled in as a server or bartender. However, there is no allegation Mr. Baird took any negative tangible employment action against Ms. Eaton by reducing her schedule or giving her less preferred table assignments when she did work as a server. Her Assistant Service Manager duties caused her to work directly with Mr. Baird, but it appears undisputed Ms. Eaton's supervisor was Mr.

Bradford.  Mr. Bradford completed Ms. Eaton's job evaluation on August 4, 2012.

(Exhibit 9 to Mr. Murphy's Deposition, Dkt. 37-8, p. 2-11.)[1]

Ms. Eaton alleges once she began working with Mr. Baird in February 2012 his

continuous comments of a sexual nature created a hostile work environment that

ultimately led to her constructive discharge. Ms. Eaton claims she first reported

inappropriate sexual comments to Mr. Bradford in May of 2012. After meeting with Mr.

Bradford, who said they would meet again, Ms. Easton decided to keep a journal of

comments made by Mr. Baird.   Ms. Eaton claims the harassment occurred every single

day and then she would go home so upset that it disrupted her family life. (Eaton Depo,

p.80, lines 4-7, Dkt. 37-4, p. 1.)

Ms. Eaton believes after her report of sexual harassment, Mr. Bradford talked with

Mr. Baird and the harassment stopped for two days. Mr. Bradford states in his affidavit

that Ms. Eaton complained Mr. Baird "did not respect" her but these complaints did not

include allegations of sexual harassment. Mr. Bradford admits at a later date Ms. Eaton

made complaints about Mr. Baird's sexual comments to her and that shortly after her

notification of the sexual comments he notified Market Partner, Michael Murphy, about

the sexual harassment allegations.  Mr. Bradford does not give a date for the first

---

[1]The job evaluation form says 8-04 for a date, but it is undisputed it evaluates Ms. Eaton's position as FOH (Front of House) Key employee position as Assistant Service Manager and trainer. Ms. Eaton testified the "Notes" on the evaluation were written by Mr. Bradford. The parties do not appear to dispute that the evaluation was in August of 2012.

conversation or second conversation with Ms. Eaton. Mr. Bradford does not indicate in his affidavit that he talked with Mr. Baird, only that he reported the sexual comments to Mr. Murphy.

Ms. Eaton indicated that in late September 2012, Mr. Murphy came to the Idaho Falls restaurant due to anonymous comments that corporate had received regarding that location. Mr. Murphy met with the employees as a group as well as managers. Ms. Eaton reported the sexual harassment by Mr. Baird to Mr. Murphy and showed him her notebook of comments she had written down from June until September of the type of sexual comments made by Mr. Baird. Mr. Murphy got upset when Ms. Eaton told him of her sexual harassment allegations and showed him her notebook. Based on Mr. Murphy's deposition testimony about being at the restaurant for a reason other than Ms. Eatons' allegations and Mr. Murphy's response to the sexual harassment allegations, it seems unlikely Mr. Murphy had been told of Ms. Eaton's sexual harassment allegations by Mr. Bradford prior to his arrival at the restaurant. Mr. Murphy testified he believed Ms. Eaton's allegations rose to the level of "sexual harassment." After meeting with Ms. Eaton, Mr. Murphy states he spoke with the human resource department and arranged for an investigation.

On October 2, 2012, Ms. Baird received a written reprimand from Mr. Bradford for her "failure to perform the functions of your position appropriately to safeguard the confidential knowledge you have acquired about the management team. Revealing

information, regarding management functions to other employees, is a violation of the confidentiality rights of Texas Roadhouse." (Dkt. 39-2, p. 5.)

Kristi Dennis, an HR Director for Roadhouse, came to Ammon on or about October 8, 2012. Ms. Dennis said she had *not* heard of Ms. Eaton's sexual harassment allegations from Mr. Murphy or anyone else prior to conducting an investigation at the location. She remembers the investigation was prompted by complaints from employees to the hotline about the management of the restaurant. She interviewed numerous employees. She testified in her deposition that she considered comments made by Mr. Baird in the presence of Ms. Eaton and another employee to be sexual harassment. (Dennis Depo., p. 83, lines 10 -20, Dkt. 37-9, p.5.) Ms. Dennis testified she did not think Ms. Eaton should work under Mr. Baird but did not take any action to change Ms. Eaton having to work with Mr. Baird on a daily basis. (*Id.*, p. 84, lines 18-21.)

Ultimately, Ms. Dennis testified her investigation was "inconclusive" because "there was dysfunction in the restaurant regarding the management team, and the individuals I spoke with were not credible because they were picking sides." (Dennis Depo, p. 60, lines 8-14, Dkt. 35-5). Ms. Dennis indicated the results of her investigation were reviewed with Mr. Bradford and Mr. Baird. Ms. Dennis did not discuss the results of the investigation with Ms. Eaton and does not remember if Ms. Eaton contacted her regarding the results. Ms. Eaton testified she left numerous phone messages regarding the status of the investigation with Ms. Dennis that were never returned. Mr. Baird testified he could not recall Ms. Dennis providing him with any coaching or training

about how to handle sexual harassment. (Baird Depo, p. 92, lines 18-21, Dkt. 37-6, p.5.)

On October 10, 2012, Mr. Murphy completed a written reprimand of Mr. Baird for "harassment" and the summary of the violation says "sexual harassment." (Exhibit Dkt. 35-5, p.40, Notice of Unsatisfactory Performance.)  There is no indication of corrective plan or action but the form does indicate a consequence would be that the "next [violation] will result in termination." *Id.*

On or about October 12, 2012, Mr. Bradford was fired.  Ms. Eaton believes Mr. Baird was gone for some training around this time period. Ms. Eaton does not allege Mr. Baird continued to make sexual comments after his reprimand on October 10, 2012 as Ms. Eaton indicates Mr. Baird stopped speaking with Ms. Eaton completely after his written reprimand.  No changes were made in Ms. Eaton's work schedule to keep her from having to work with or under Mr. Baird. Ms. Eaton claims she worked with Mr. Baird a few times after the investigation by Ms. Dennis to know that we weren't going to be able to work together.  Shortly thereafter in late October, Ms. Eaton told the new Managing Partner, Christ Duran, she could not continue to work with Mr. Baird and had no choice but to resign.

Ms. Eaton filed her Complaint on May 14, 2013 (Dkt. 1) and her Amended Complaint on June 20, 2014 (Dkt. 33).  In the Amended Complaint, Ms. Eaton alleges three causes of action: sexual harassment, hostile work environment and retaliation.  The Defendant denies each of these claims and seeks summary judgment.

## STANDARD OF REVIEW

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327.

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those that may affect the outcome of the case. *See id.* at 248.

The moving party is entitled to summary judgment if that party shows that each issue of material fact is not or cannot be disputed. To show the material facts are not in dispute, a party may cite to particular parts of materials in the record, or show that the materials cited do not establish the presence of a genuine dispute, or that the adverse party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A)&(B); *see T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex*, 477 U.S. at 322). The Court must consider "the

cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3).

Material used to support or dispute a fact must be "presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Affidavits or declarations submitted in support of or opposition to a motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party. All inferences which can be drawn from the evidence must be drawn in a light most favorable to the nonmoving party. *T.W. Elec. Serv*., 809 F.2d at 630-31 (internal citation omitted).

Rule 56(e)(3) authorizes the Court to grant summary judgment for the moving party "if the motion and supporting materials–including the facts considered undisputed–show that the movant is entitled to it." The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby*, 477 U.S. at 252.

**ANALYSIS**

**I. Sexual Harassment**

Plaintiff brings two separate causes of action: sexual harassment and hostile work environment. Under the facts of this particular case, Defendant argues there is really only one claim for sexual harassment. The Court agrees. A hostile work environment claim is a type of sexual harassment claim under Title VII and the applicable Idaho Code. *Heustis v. Orsi*, 2007 WL 1797636 (D. Idaho 2007); *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998); *Burlington Industries v. Ellerth*, 524 U.S. 742 (1998). In this case, the Court finds Plaintiff's first and second causes of action are actually one cause of action: sexual harassment in the form of a hostile work environment.

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII prohibits sexual harassment by a supervisor whether it is based on a "quid pro quo" concept or the overall work environment. "Quid pro quo" harassment exists when employment is dependent on the provision of sexual favors to a supervisor. A hostile work environment can constitute sexual harassment when the work environment is unpleasant and unacceptable based upon the consideration of sex (e.g., jokes, language, unwanted touching). An employer is vicariously liable for the supervisor's actions if there is a "tangible employment action" taken against the victimized employee in either

situation. *See Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) and *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998). If there is no tangible employment action against the complaining employee, an employer may raise an affirmative defense to a sexual harassment claim. *Id.*

An employer can also be liable for a hostile work environment created by one or more co-workers. Where the alleged sexual harassment does not come from a supervisor, the employer is liable if it knew or should have known of the sexual harassment and failed to act. *Nichols v. Azteca Restaurant Enterprises, Inc.*, 256 F.3d 864, 875 (9th Cir. 2001).

## A. Ms. Eaton's Prima Facie Case

To make a prima facie case of a hostile work environment based on sexual harassment against an employer, a plaintiff must show: (1) he or she was subjected to verbal or physical conduct of a sexual nature; (2) the conduct was unwelcome; and (3) the conduct was objectively and subjectively so severe or pervasive as to alter the conditions of employment and create a discriminatory abusive working environment. *Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1055 (9th Cir. 2007). "Objective hostility is determined by examining the totality of the circumstances and whether a reasonable person with the same characteristics as the victim would perceive the workplace as hostile." *Id.* (citation omitted).

In this case, Plaintiff alleges Mr. Baird made daily and continuous sexual innuendo comments to her, that the sexual comments were unwelcome as well as so severe or pervasive such that they altered the conditions of her employment and created a hostile work environment. Defendant responds that Ms. Eaton's allegations are self-serving, the comments were not unwelcome as she also made sexual comments at work to Mr. Baird and the comments were not so severe or pervasive that they altered her conditions of employment. Moreover, Defendant argues it is entitled to an affirmative defense since Roadhouse had policies against harassment and immediately responded when the allegations were raised by Ms. Eaton.

In a sexual harassment case, it is normal for the evidence to come from the statements of the person alleged to be the harasser and the person alleged to be the victim of the harassment. For the Defendant to state the Plaintiff's only evidence is her "self-serving" statement is without merit. The Plaintiff's testimony, like any other witness to factual events, is not self-serving if such statements are that witness' recollection of what occurred. Here the same could be said of Mr. Baird's testimony that his response to the allegations are self-serving statements. Defendant's repeated self-serving statement argument goes to whether a witness is credible, a determination that is exclusively within the province of the fact finder at trial, not the district court on summary judgment. *Dominguez-Curry v. Nevada Transp. Dept.* 424 F.3d 1027, 1035-36 (9th Cir. 2005). The Court is required to give the Plaintiff the benefit of all favorable inferences since Defendant filed the motion for summary judgment. Therefore, the Court must determine

if Plaintiff's testimony as well as other evidence presented by Plaintiff, if believed, is sufficient evidence to establish a genuine issue of material fact to preclude summary judgment.

Ms. Eaton has testified as to some specific verbal comments of a sexual nature by Mr. Baird towards Ms. Eaton. Ms. Eaton has provided the names of other employees that observed and reacted to Mr. Baird's alleged inappropriate comments. Ms. Eaton recorded comments in a notebook after May 2012 to document the frequency and nature of the inappropriate comments. Mr. Baird does not dispute that "some" of Ms. Eaton's allegations are true, but claims he was not the instigator. The Court acknowledges Mr. Baird testified in his deposition that he only responded to sexual comments if something of a sexual nature was said to him first. Mr. Baird provided a couple of examples of alleged sexual comments made by Ms. Eaton while she was at work. He does not recall whether his examples were when they were both servers or after he had been promoted to Service Manager.

The Court finds Mr. Baird's testimony is direct contravention to Ms. Eaton's testimony and creates a genuine issue of material fact that cannot be resolved in summary judgment motion. It is anticipated that both sides will call other employees that worked at the restaurant who are alleged to have observed some of the verbal interactions between Ms. Eaton and Mr. Baird. Viewing the facts in a light most favorable to Plaintiff for purposes of the pending motion, the Court finds Ms. Eaton has established the first element of her prima facie case: sexual comments were made to her by Mr. Baird.

Plaintiff maintains the comments were unwelcome. Defendant argues the comments were not unwelcome as Mr. Baird testified to occasions where Ms. Eaton told Mr. Baird he "looked mighty tasty today." (Baird Depo, Dkt. 35-5, p. 31.) It is unclear if this conduct is admitted by Plaintiff.  Plaintiff does not deny she might have made a joking comment to another worker regarding "Andy Bucks," but, there is no indication this comment was made to Mr. Baird and, if made, it was anything more than a one-time joke comment by Ms. Eaton. Mr. Baird claims Ms. Eaton referred to herself as "fluff"[2] for a month or two.  (Baird Depo., p. 76, lines 1-10, Dkt. 35-5, p.30.)

Certainly an employee can make a sexual joke and still claim a hostile work environment exists later when the comments become one-sided, the comments continue for months with several comments a day and there is no further evidence the alleged victim of the harassment continued joking with the co-worker.  The credibility of all the witnesses will be relevant to determine what was actually occurring at this restaurant, but for purposes of this motion, the Court finds Plaintiff has provided adequate evidence the comments were unwelcome by the time she talked with Mr. Bradford in May and with Mr. Murphy in September.

Next Defendant argues Plaintiff cannot establish the third prong that the conduct was objectively and subjectively so severe or pervasive as to alter the conditions of

---

[2]Mr. Baird testified it was explained to him that  "fluff" was a term in the porn industry and because of this sexual connotation, Plaintiff referring to herself as fluff supports that the sexual comments were not unwelcome and not initiated by Mr. Baird.

employment and create a discriminatory abusive working environment. To satisfy this requirement, the employee needs to prove that the workplace was both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive and one that the victim did perceive to be so. *Faragher* at 787; *Nichols v. Azteca Rest. Enters., Inc.*, 258 F.3d 864 (9th Cir. 2001). In *Harris v Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993) the Supreme Court held:

> [W]hether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity, whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. The effect on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive. But while psychological harm, like any other relevant factor, may be taken into account, no single factor is required.

Simple teasing, offhand comments and isolated incident (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

The more severe the conduct, the less pervasive it has to be and vice versa, the more pervasive the conduct the less severity that is required. Here the facts are disputed as to whether under all the circumstances a jury would find Mr. Baird's conduct was severe and pervasive. But taking the facts in a light most favorable to Ms. Eaton, the Court finds Ms. Eaton has carried her burden on this element of her prima facie case when she documented the nature of the comments, complained of and shared Mr. Baird's

comments with friends and family, testified the conduct was observed by co-workers, testified the comments occurred every day with up to five comments each work day and made her upset after she left work. If Ms. Eaton's version of the facts is believed over Mr. Baird's, a reasonable person could find the comments were severe or pervasive and such constant comments created an environment that was subjectively and objectively abusive and hostile such that it altered the conditions of employment at the restaurant.

### B. Liability of the Employer

#### 1. Was Mr. Baird Acting as Ms. Eaton's Supervisor or Co-Worker?

Having found for purposes of the motion for summary judgment that Plaintiff's claims of sexual harassment survive, the Court finds it would be helpful to discuss the other issues relevant to the sexual harassment claim. Therefore, the next question becomes that of employer liability. The Plaintiff maintains Defendant is "vicariously liable" since Mr. Baird was a supervisor.

For an employer to be liable for a supervisor's discriminatory conduct, a supervisor has to have immediate or successively higher authority over the employee. *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 765 (1998). The Court finds the record does support that Mr. Baird was a manager or supervisor, but it does not establish Mr. Baird's was *Ms. Eaton's supervisor* for purposes of having higher authority over the employee such as directing her key employee duties of training new employees, running

the front of the house, etc. Ms. Eaton testified Mr. Baird did not have the authority to promote or fire her, did not do any of her job performance evaluations, and that she reported to Mr. Bradford. Mr. Bradford completed a written job evaluation in August 2012 and also a reprimand in October of 2012. Mr. Baird was not involved in these personnel matters. These facts establish that while Mr. Baird arguably "supervised" Ms. Eaton to a limited extent when she covered for a server, he did not "supervise" her in her role as key hourly employee. Therefore, the Court finds as a matter of law in this particular case, the alleged sexual harassment was by a co-worker, not a supervisor and vicarious liability does not apply.

## 2. Employer Liability for Co-Worker Harassment

The next question becomes has Plaintiff established that Roadhouse knew or should have known of the alleged harassment. It is undisputed the alleged harassment was reported to Mr. Bradford on or about May of 2012, to Mr. Murphy in September of 2012 and to Ms. Dennis in October of 2012. It is unclear from the record whether Mr. Bradford actually told Mr. Murphy of the harassment allegations and also whether Mr. Murphy reported Ms. Eaton's allegations to Ms. Dennis. Regardless, Roadhouse's policy does not require the alleged harassment to be reported to more than one manager, so it appears that Roadhouse should have been on notice of the alleged harassment in May of 2012 when it was first reported to
Mr. Bradford.

Assuming for purposes of this motion that Plaintiff can establish that Roadhouse knew of the harassment on this date, the next question becomes did Roadhouse fail to act and/or is Roadhouse entitled to an affirmative defense. "Once an employer becomes aware of co-worker sexual harassment, the employer must take adequate remedial measures in order to avoid liability for the harassment. These measures must include some form of disciplinary action." *Yamaguchi v. U.S. Dept. of the Air Force*, 109 F.3d 1475, 1482 (9th Cir. 1997). In *Ellison v. Brady*, 924 F. 2d 872, 882 (9th Cir. 1991), the court held the reasonableness of the remedy depends on its ability to: (1) "stop harassment by the person who engaged in harassment," and (2) "persuade potential harassers to refrain from unlawful conduct."

Again, whether the response by Roadhouse was a failure to act or was a reasonable remedy is disputed by the parties and will have to be determined by a jury. A jury will have to determine if Mr. Bradford was negligent in reporting the alleged harassment to others in the company and whether his response of allegedly "talking" with Mr. Baird after Ms. Eaton disclosed the sexual harassment in May could be viewed as an adequate disciplinary step. Since Ms. Eaton alleges the harassment stopped for two days but then started again seems to support Plaintiff's argument the remedy by Mr. Bradford on behalf of Roadhouse may not have been reasonable and may not have included disciplinary action sufficient to stop the harassment. Moreover, it is unclear from the portions of the depositions submitted whether or not Mr. Baird testified that Mr. Bradford even talked to

him in May of 2012 about the sexual harassment allegations of Ms. Eaton or his first knowledge of her allegations was in September/October of 2012.

Mr. Murphy testified he arranged an investigation of Ms. Eaton's allegations after meeting with her, but Ms. Dennis testified she did not know of Ms. Eaton's allegations prior to speaking with Ms. Eaton. Ms. Dennis testified in her deposition that no changes were made regarding who Ms. Eaton worked with after the investigation concluded even though she also stated that she considered the alleged comments by Mr. Baird sexual harassment and Mr. Baird should be terminated. Mr. Baird was not fired and was merely told if it happens again, the "next time" it will result in termination. Mr. Bradford was terminated in October of 2012, but he was not the alleged harasser. It will be up to a jury to evaluate Roadhouse's actions to determine if the "remedies" by Roadhouse were reasonable.

### C. Has Employer Established Affirmative Defense?

Assuming the Plaintiff has established a prima facie case and negligence on the part of Roadhouse, it is still possible for summary judgment to be granted if Roadhouse can establish it is entitled to the affirmative defense established by the Supreme Court.

If tangible employment action is taken against an employee due to the hostile work environment, an employer is not entitled to an affirmative defense. Instead, the employee must prove the employer knew or should have known of the sexual harassment and failed to act. This appears to be similar to negligence standard described above.

However, when no tangible employment action is taken, an employer can raise an affirmative defense to liability and damages. *Ellerth* at 765. The defense has two requirements: "(a) the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Id.*

### 1. Was Tangible Employment Action Taken Against Ms. Eaton?

"A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth* at 761. "A tangible employment action in most cases inflicts direct economic harm. *Id.* 763.

Here, the record appears undisputed that there was no "traditional" tangible employment action taken against Ms. Eaton for her reporting of the sexual harassment allegations. She was not fired, demoted, her duties were not reassigned and she did not suffer a significant change in benefits. Instead, Ms. Eaton claims she was "constructively discharged" and this was a tangible employment action.

### 2. Was Ms. Eaton Constructively Discharged?

Constructive discharge occurs if an employee can prove he or she was subjected to intolerable working conditions such that a "reasonable person in his/her position would have felt compelled to resign." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 141 (2004). In *Suders*, the Supreme Court held genuine issues of material fact existed

concerning plaintiff's hostile work environment and her constructive discharge claim. *Id.* at 152. "[H]arassment so intolerable as to cause a resignation may be effected through co-worker conduct, unofficial supervisory conduct, or official company acts." *Id.* at 148.The Supreme Court attempted to distinguish between supervisor conduct and co-worker conduct, finding if the sexual harassment is by a co-worker who is not in a supervisory position, there is less chance of a resignation being deemed a constructive discharge.  It is more likely to be a constructive discharge if a supervisor or company official acts to encourage the resignation.  *See Robinson v. Sappington*, 351 F. 3d 317 (7th Cir. 1004) (cited in *Suders* as opinion with proper analysis of constructive discharge determination where a judge suggested an employee who was allegedly being sexually harassed by another judge resign was constructive discharge).

Constructive discharge cannot exist in every case an employee decides to resign after being sexually harassed.  To do so, would eliminate the affirmative defense for employers established in *Faragher/Ellerth*. Instead, the case law establishes for a constructive discharge to equate to a tangible employment action, the work conditions must be intolerable. The bar for a finding of constructive discharge is set high "because federal anti-discrimination policies are better served when the employee and employer attack discrimination within their existing employment relationship, rather than when the employee walks away and then later litigates whether his employment situation was intolerable." *Poland v. Chertoff*, 494 F.3d 1174, 1184 (9th Cir. 2007).

In determining whether conditions were "intolerable," the conditions are measured at the time of the employee's resignation. *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1465 (9th Cir. 1994) (alleged harasser was fired two and one-half months prior to employee's resignation and after employee's preferred shift at work was restored so there was no constructive discharge). Waiting until the sexual harassment has ended to resign is not constructive discharge. *Montero v.AGCO Corp.* 192 F.3d 856, 861 (9th Cir. 1999) (employee waiting three to four months after harassment ended to resign is not constructive discharge).

"Working conditions for constructive discharge must be even more egregious that the high standard for hostile work environment because 'in the "ordinary case, an employee is expected to remain employed while seeking redress.'" *Tutman v. WBBM-TV, Inc./CBS, Inc.*, 209 F.3d 1044,1050 (7th Cir. 2000) (citations omitted). An employee has to show why he had to quit immediately, before he found another job and why his duty to mitigate damages did not require him to remain. *Lindale v. Tokheim Corp.,* 145 F.3d 953, 956 (7th Cir. 1998).

There are genuine issues of material fact regarding whether or not Ms. Eaton was constructively discharged. She indicates she could not continue working with Mr. Baird and Roadhouse did nothing to remove Mr. Baird as a co-worker. Ms. Eaton claims her followup calls to Ms. Dennis were ignored. Roadhouse claims Ms. Eaton was not constructively discharged because at the time she quit Mr. Baird was not working with

her as he was gone for training and there is no indication that when he returned the harassment had not stopped.

Summary judgment cannot be granted on the issue of whether Ms. Eaton was constructively discharged. However, if a jury finds Ms. Eaton was constructively discharged then this could be a tangible employment action and the affirmative defense would not be available to Roadhouse. Then Plaintiff would carry the burden to establish Roadhouse was negligent and the damages for the sexual harassment claim the jury could consider would include damages related to Ms. Eaton's constructive discharge (i.e, lower wage at new job, time between leaving old job and finding new job, etc.).

### 3. If no constructive discharge, then Roadhouse must prove two elements of affirmative defense.

If a jury finds no constructive discharge occurred, then the question for the jury shifts to the affirmative defense being established by Roadhouse. The first prong of the defense is that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior. *Ellerth* at 765. The Court acknowledges that there appears to be no genuine issue of fact regarding the existence of a sexual harassment policy which encourages employees to report sexual harassment and indicates sexual harassment is not acceptable behavior by any employee. The policy clearly provides a reporting mechanism for harassment complaints. It is also undisputed that Ms. Eaton

acknowledged that she had read the policy, signed an acknowledgment about reading the policy and trained new employees on the policy.

Whether or not the employer exercised reasonable care to correct promptly any sexually harassing behavior is also part of the first prong. As discussed earlier under the negligence standard, genuine issues of material fact exist regarding whether adequate and prompt corrective action was in fact taken by Roadhouse.

As to the second prong of the affirmative defense, the Court also finds genuine issues of material fact exist regarding whether or not Ms. Eaton acted "unreasonably" in failing to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. *Ellerth* at 765. Defendant has the burden to show it was not reasonable for Ms. Eaton to have reported the allegations to Mr. Bradford and then to wait almost four months after the harassment started again before reporting the alleged harassment to Mr. Murphy. Since the policy only required an employee to report the allegations to one manager, a jury could find Ms. Eaton was reasonable and in compliance with the company policy in reporting the allegations to Mr. Bradford and then giving Roadhouse time to correct the actions of Mr. Baird. The keeping of the notebook of comments could also be deemed by a jury to be a reasonable action by an employee to protect themselves if negative employment action was taken against them in the future. Reporting the allegations to three managers in hopes of a change will also be weighed by the jury in determining if Ms. Eaton acted reasonable. Simply put, the fact-finders will

have to determine if Roadhouse has established both prongs of the affirmative defense if it applies in this case.

### D. Conclusion

As indicated in the Court's analysis, there are many areas of genuine issues of material fact that cannot be resolved at this stage in the litigation. It will be up to the jury to hear the evidence and weigh the credibility of the evidence and see if Ms. Eaton has established by a preponderance of the evidence that a hostile environment existed. If a hostile environment existed, the jury will have to determine did a tangible employment action occur in the form of constructive discharge and was Roadhouse negligent in responding to the allegations or was there no constructive discharge and can Roadhouse establish by a preponderance of the evidence the two prongs of the affirmative defense exist under the facts of this case. A special verdict will be required.

### II. Retaliation

"To prevail on a Title VII retaliation claim, plaintiff must establish that she engaged in activity protected by Title VII, that she was subjected to an adverse employment action, and that there was a causal link between the protected activity and the adverse employment action." *EEOC v. Dinuba Med. Clinic*, 222 F.3d 580, 586 (9th Cir. 2000). In *University of Texas Southwestern Med. Ctr. v. Nassar,* __ U.S. __, 133 S.Ct. 2517, 2534 (2013), the Supreme Court clarified "a plaintiff making a retaliation claim under § 2000e-3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer."

Here, the Court finds the Plaintiff has established she was engaged in a protected activity of reporting alleged sexual harassment. But Ms. Eaton cannot establish the "employer" took any adverse employment action against her. The Ninth Circuit takes an expansive view of the term "adverse employment action." *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 847 (9th Cir. 2004). The term includes transfers of job duties, negative performance reviews, actions that affect an employee's compensation, and warning letters. *Id.* (citing *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987)). There is no evidence Roadhouse or any manager or supervisor fired, demoted, failed to promote, reduced any employment benefits, hours, etc. of Ms. Eaton. Ms. Eaton did receive a written reprimand in October from Mr. Bradford after she had talked with Mr. Murphy, this reprimand does not reference her sexual harassment allegations and alone does not rise to the level of an adverse employment action of any consequence as it had no impact on her job, pay, shift schedule, benefits, etc.

The alleged constructive discharge cannot be the "adverse employment action" as that action was not taken by the employer, but by the employee. For these reasons, the retaliation claim fails as a matter of law and summary judgment should be granted in Defendant's favor on this claim.

## MOTION TO STRIKE

Plaintiff seeks to strike the affidavit of Mr. Bradford filed with Defendant's reply brief as well as prohibit Mr. Bradford from testifying at trial since he did not make himself available for a deposition. The Court agrees the declaration was not timely filed with the reply brief, but finds no prejudice to Plaintiff as the Court did not rely on the affidavit in determining whether or not summary judgment should be granted. The record establishes that Mr. Bradford was fired by Roadhouse, so Roadhouse had no control over requiring him to attend a deposition scheduled by Plaintiff's counsel. The Court finds no basis to prohibit Mr. Bradford from testifying for either side at trial. His testimony will be subject to cross-examination so neither party should be prejudiced. The motion to strike is denied.

## ORDER

**IT IS ORDERED:**

1.  Defendant's Motion for Summary Judgment (Dkt. 35) is **GRANTED IN PART AND DENIED IN PART**. Defendant is granted summary judgment on Plaintiff's Retaliation Claim and this cause of action is DISMISSED. Defendant motion for summary judgment is denied on Plaintiff's Sexual Harassment Claim based on a Hostile Work Environment. This claim shall proceed to trial on January 20, 2015, however, the Court will move the start time to 1:30 p.m. to allow the Court time to travel to Pocatello.

2. Plaintiff's Motion to Strike (Dkt. 40) is **DENIED.**

DATED: **December 3, 2014**

Honorable Edward J. Lodge
U. S. District Judge